1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

NANCY MARIE HUNTER,

Plaintiff,

v.

ANDREW SAUL,

Defendant.

3:20-cv-00105-CLB

<u>ORDER</u>

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Nancy Marie Hunter's ("Hunter") application for disability insurance benefits pursuant to Title II of the Social Security Act.  Currently pending before the court is Hunter's motion for remand. (ECF Nos. 23, 24.)[1]  In this motion, Hunter seeks the reversal of the administrative decision and remand for an award of benefits.  (*Id.*)  The Commissioner filed a response and cross-motion to affirm (ECF Nos. 27, 28), and Hunter filed a reply (ECF No. 29).  Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), the court concludes the Commissioner's finding that Hunter could perform past relevant work was supported by substantial evidence.  Therefore, the court denies Hunter's motion for remand, (ECF No. 23), and grants the Commissioner's cross-motion to affirm, (ECF No. 27).

**I.    STANDARDS OF REVIEW**

A.    <u>Judicial Standard of Review</u>

This court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854

---

[1]    ECF No. 24 is a memorandum in support of the motion to remand.

(9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision.  *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted).  The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

B.    Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or

combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 16-3p. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSR 16-3p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSR 17-2p.

After making the RFC determination, the ALJ must then turn to step four to determine whether the individual has the RFC to perform her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.    CASE BACKGROUND**

A.    Procedural History

Hunter applied for disability insurance benefits ("DIB") on March 2, 2016 with an alleged disability onset date of October 1, 2015. (Administrative Record ("AR") 102, 191-92.) The application was denied initially (AR 116-120), and upon reconsideration (AR 124-27). Hunter subsequently requested an administrative hearing. (AR 128-129.)

On September 26, 2018, Hunter and her attorney appeared at a hearing before an ALJ. (AR 33-79.) A vocational expert ("VE") also appeared at the hearing. (*Id.*) The ALJ issued a written decision on February 25, 2019, finding that Hunter was not disabled because she could perform past relevant work. (AR 15-26.) Hunter appealed, and the

1  Appeals Council denied review on December 17, 2019.  (AR 1-6.)  Accordingly, the ALJ's
2  decision became the final decision of the Commissioner.   Having exhausted all
3  administrative remedies, Hunter filed a complaint for judicial review on February 17, 2020.
4  (ECF No. 1.)

5       B.   ALJ's Decision

6       In the written decision, the ALJ followed the five-step sequential evaluation process
7  set forth in 20 C.F.R. §§ 404.1520 and 416.920.  (AR 15-26.) Ultimately, the ALJ disagreed
8  that Hunter had been disabled from October 1, 2015, the date the application was filed.
9  (AR 25.) The ALJ held that, based on Hunter RFC, age, education, and/ work experience,
10  she could perform past relevant work as generally performed in the national economy.
11  (AR 24-25.)

12      In making this determination, the ALJ started at step one.  Here, the ALJ found
13  Hunter had not engaged in substantial gainful activity since the alleged onset date of
14  October 1, 2015.  (AR 17.)  At step two, the ALJ found Hunter had the following severe
15  impairments: De Quervain's tendinitis, asthma, status post-trauma of right knee by history,
16  status post-motor vehicle accident, sacroiliitis, back disorder, and neck disorder.  (AR 17-
17  18.)  At step three, the ALJ found Hunter did not have an impairment or combination of
18  impairments that either met or medically equaled the severity of those impairments listed
19  in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.
20  (*Id.*)

21      Next, the ALJ determined Hunter had an RFC to perform sedentary work as defined
22  by 20 C.F.R. §§ 404.1567(a) except:

23      The claimant would be off task 5 percent of the workday due to pain and
     fatigue. She could frequently finger and occasionally balance, stoop, crouch,
24      and climb ramps and stairs. She could never kneel, crawl, push or pull with
     her lower extremities, and never climb ladders, ropes or scaffolds. She could
25      occasionally work around moving machinery, but never work at exposed
     heights. She could frequently be exposed to temperature extremes, wetness
26      and high humidity, and occasionally be exposed to atmospheric irritants,
27      such as dust, fumes, odors and gases.

28  (AR 18-19.)

6

After considering the record, the ALJ found that the facts in the record do not dispute Hunter has conditions, which singly or in combination, cause her symptoms; however, the evidence of the record does not demonstrate that Hunter's symptoms exist at the level of severity as alleged by Hunter.  (AR 24.)  In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against Hunter's credibility.  (AR 18-24.)  The ALJ then determined that Hunter was capable of performing past relevant work as a secretary and clerk typist, which did not require the performance of work-related activities precluded by her RFC.  (AR 25.)  Accordingly, the ALJ held that Hunter had not been under a disability since October 1, 2015 and denied her claim. (*Id.*)

## III.   ISSUES

Hunter seeks judicial review of the Commissioner's final decision denying DIB under Title II of the Social Security Act.  (ECF No. 23.)  Hunter raises the following issues for this court's review:

1.  Whether the ALJ erred in finding Hunter is not *per se* disabled under Medical Listing 1.04A;

2.  Whether the ALJ properly weighed the medical opinion evidence in determining Hunter's RFC; and,

3.  Whether the ALJ properly evaluated Hunter's subjective statements.

## IV.   DISCUSSION

A.   The ALJ Properly Weighed the Evidence in Determining that Hunter is not *Per Se* Disabled.

Hunter argues that the ALJ failed to properly evaluate her medical conditions to find that she is *per se* disabled, as she meets or equals one of the Medical Listings described in section 1.04A, Appendix 1 to Subpart P of 20 C.F.R. § 404.1520(a)(4)(iii).  (ECF No. 24 at 27.)  Hunter further asserts that the ALJ made a conclusory finding that she does not have an impairment or combination of impairments that meet or medically equal a Subpart P Medical Listing.  (*Id.*)

1    If a claimant suffers from multiple impairments and none of them individually meet

2    or equal a listed impairment, the collective findings of the claimant's impairments will be

3    evaluated to determine whether they meet or equal the characteristics of any relevant

4    listed impairment.  *See* 20 C.F.R. §§ 404.1526(b)(3), 416.926(b)(3); *see also Marcia v.*

5    *Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  "An ALJ is not required to discuss the

6    combined effects of a claimant's impairments or compare them to any listing in an

7    equivalency determination unless the claimant presents evidence in an effort to establish

8    equivalence." *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

9    The law only requires that the ALJ evaluate a claimant's symptoms, signs, and

10   laboratory findings which are medically equal to the symptoms, signs, and laboratory

11   findings of a listed impairment in severity to a listed criterion.  20 C.F.R. § 404.1529(d)(3).

12   However, an ALJ will not substitute allegations of pain or other symptoms for missing or

13   deficient sign or laboratory finding which raises the severity of an impairment to that of a

14   listed impairment.  20 C.F.R. § 404.1529(d)(3).  The ALJ does not need to separate his

15   factual analysis for his step three determination under a particular heading, but rather it is

16   enough that he discussed and evaluated the evidence in his opinion which formed the

17   basis for his decision.  *See Lewis v. Apfel*, 236 F.3d 503, 513-14 (9th Cir. 2001).

18   Here, the ALJ made a detailed record under his analysis of step-four, where he

19   summarized medical opinions from various evaluating physicians and large sections of

20   the medical record.  The ALJ also noted that no medical source opined that Hunter's

21   impairments met or medically equaled any of the listings in Subpart P.  (AR 18.)  The ALJ

22   stated in his opinion that he considered all the symptoms to the extent that they can be

23   accepted as consistent with the objective medical evidence, and found that Hunter has

24   severe impairments, but the record does not demonstrate a disabling condition.  (AR 19-

25   20.)  The ALJ made specific notation of the fact that the objective medical record does not

26   support the extent of Hunter's alleged symptoms but that there is some concern from

27   treating sources of symptom exaggeration.  (AR 23.)  The objective medical evidence in

28

1  the record is inconsistent with Hunter's allegations of disabling symptomology and does

2  not support an equivalence to a listed impairment under Subpart P. (AR 23.)

3  Objective findings, and imaging studies support that Hunter has degenerative disc

4  disease herniations in the cervical and lumbar regions of the spine; however, clinically she

5  has presented at different times with normal gait, no apparent thigh atrophy, and no

6  referred back pain from leg raises, which are consistent with spinal foramina.  (AR 20-21.)

7  Where evidence is susceptible to more than one rational interpretation, the court must

8  uphold the decision of the ALJ.  *Orteza*, 50 F.3d at 749 (citation omitted).  The relevant

9  portions of the record cited by the ALJ in his opinion support his conclusion that Hunter is

10  not *per se* disabled, and his thorough evaluation of the record is an adequate assessment

11  upon which the "foundations of ultimate factual conclusions are based."  *Gonzalez v.*

12  *Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).  As the ALJ is responsible alone for

13  determining the credibility of Hunter's allegations of disabling symptomology, and for

14  resolving any ambiguities, substantial evidence exists to support his conclusion that

15  Hunter does not have an impairment or combination of impairments that meets or

16  medically equals the severity of the listed impairments in Appendix 1 to Subpart P of 20

17  C.F.R. § 404.1520(a)(4)(iii).

18  **B.**   **The ALJ Properly Weighed the Medical Opinion Evidence in Determining**
       **Hunter's RFC.**

19

20  Next, Hunter argues that the ALJ improperly gave "little weight" to the opinions of

21  Hunter's treating physician Dr. Ruggles, who asserted that Hunter was disabled, and that

22  the ALJ erred in his assertion that determinations of disability are reserved solely for the

23  Commissioner.  (ECF No. 24 at 23-33.)  Hunter further argues that the ALJ erred in giving

24  little weight to Dr. Glick, the Administration's own examining physician, finding that his

25  observations were based on subjective allegations from Hunter herself, and not

26  appropriate medical findings.  (*Id.*)  Finally, Hunter asserts that the ALJ failed to explain

27  how the objective evidence does not support the opinions of Dr. Ruggles. (*Id.*)

28

1           1.  Weight of Treating Physicians vs. Non-Examining Physicians

2           There are three types of medical opinions (treating, examining, and nonexamining).

3   *See Valentine v. Comm'r of Soc. Sec. Admin*., 574 F.3d 685, 692 (9th Cir. 2009); *Lester*

4   *v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995) (amended April 9, 1996).  For claims filed

5   before March 27, 2017, each type is accorded different weight.  20 C.F.R. §§ 404.1527,

6   416.927.  Generally, more weight is given to the opinion of a treating source than the

7   opinion of a doctor who did not treat the claimant.  *See Garrison v. Colvin*, 759 F.3d 995,

8   1012 (9th Cir. 2014); *Turner v. Comm'r of Soc. Sec. Admin*., 613 F.3d 1217, 1222 (9th Cir.

9   2010); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  Medical opinions and

10  conclusions of treating physicians are accorded special weight because these physicians

11  are in a unique position to know claimants as individuals, and because the continuity of

12  their dealings with claimants enhances their ability to assess the claimants' problems.  *See*

13  *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988); *Winans*, 853 F.2d at 647; *see*

14  *also Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating

15  physician's opinion is entitled to 'substantial weight.'")  This court "afford[s] greater weight

16  to a treating physician's opinion because 'he is employed to cure and has a greater

17  opportunity to know and observe the patient as an individual.'" *Magallanes v. Bowen*, 881

18  F.2d 747, 751 (9th Cir. 1989) (internal quotation omitted).  Accordingly, more weight is

19  given to the opinion of an examining source than to a nonexamining source.  *See Lester*,

20  81 F.3d at 830–31; *Pitzer v. Sullivan*, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).  The ALJ is

21  not, however, bound by the conclusions of any particular physician.

22          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

23  considering its source, the court considers whether (1) contradictory opinions are in the

24  record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted

25  opinion of a treating or examining medical professional only for "clear and convincing"

26  reasons.  *Lester*, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or

27  examining professional may be rejected for "specific and legitimate" reasons.  *Id.* at 830.

28  The ALJ can "meet this burden by setting out a detailed and thorough summary of the

facts and the conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (citation omitted).  "The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

*i. Treating Physicians – Dr. Ruggles, Dr. Hayes, Dr. Fuji, Dr. Broderick*

Hunter asserts that the ALJ erred by discounting the opinions from Dr. Ruggles provided on June 22, 2016 through October 2, 2017 because the determination of disability is reserved to the Commissioner.  (ECF No. 24 at 28.)  Hunter argues that Dr. Ruggles medical opinion should be given controlling weight because he gave medical opinions to the "nature and severity" of Hunter's impairment, and those opinions address a diagnosis, symptoms, prognosis, and any work she could do, despite her impairments.  (*Id.* at 29.) Hunter also notes of some significance to her argument, that the ALJ also gave little weight to the opinion of Dr. Glick, an examining physician who performed a consultative examination in 2016.  (AR 24, 610-617.)  The ALJ gave little weight to the opinion of Dr. Glick, as he found it was based on Hunter's subjective claims of pain, rather than appropriate medical findings, which Hunter argues is a "gross mischaracterization" of the report from Dr. Glick.  (ECF No. 24 at 34.)

Hunter's arguments fail to address the opinions of other treating physicians cited in the administrative record that are contrary to those of Dr. Ruggles and Dr. Glick.  "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion."  *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020).  "[A]n [ALJ] may disregard medical opinion that is brief, conclusory, and inadequately supported by clinical findings."  *Britton v. Colvin*, 787 F.3d 1011, 1012 (9th Cir. 2015) (per curiam); *see also Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).  If the court were to characterize the ALJ's opinion as conclusory as argued by Hunter, then the court would have to ignore the multiple other treating and

11

examining physicians who the ALJ concludes differ on the extent of Hunter's disability. (AR 19-24.)

During the relevant period in question, October 1, 2015, when the alleged onset of the disability occurred, through the hearing on September 26, 2018, Hunter was examined and treated by many physicians who opined on her condition and level of disability.  (AR 19-24, 362, 490, 620, 623, 633.)  Dr. Hayes, who examined Hunter in October of 2015, states she would be able to return to work after two weeks.  (AR 362.)  Dr. Ruggles opined that he considered her permanently disabled as of February 5, 2016.  (AR 575, 621-23.) Dr. Fuji, an orthopedist, gave Hunter a note for sedentary work in January of 2016.  (AR 490.)  Similarly, Dr. Broderick, and orthopedic surgeon stated she would be able to perform sedentary work on April 21, 2016.  (AR 633.)  Treating physicians have not been in any unanimous agreement as to the level of Hunter's disability.  Accordingly, Dr. Ruggles's and Dr. Glick's medical opinion are not uncontroverted.

Further, the objective medical evidence is not consistent with Dr. Ruggles assertion that Hunter is 100% disabled, but instead supports the ALJ's finding that there are some concerns around the possibility of Hunter's symptom exaggeration.  (AR 23.)  In 2016, both Dr. Ruggles and Dr. Glick determined that Hunter was unable to perform even sedentary work on a continuing basis and was confined to lying down most of the day. (AR 620, 623.)  The ALJ discounted Dr. Glick's opinion as it relied heavily on effort dependent testing, and Hunter has a history of giving poor effort in examinations, being vague with complaints and refusing testing, as well as treatment.  (AR 24, 500.)  Dr. Ruggles himself noted that Hunter had a long list of issues and continual demands but could not define many of them as she continually added to her list of problems and did not follow through on questions.  (AR 723.)  Dr. Ruggles diagnosis of carpal tunnels syndrome was the basis of his determination of Hunter's disability by February 5, 2016, although she refused EMG testing to confirm this diagnosis.  (AR 20, 374-75.)  When Hunter agreed to undergo EMG testing on May 11, 2016, there was no signs of abnormality that would support Dr. Ruggles diagnosis.  (AR 500.)

Hunter was examined by Dr. Fuji on January 8, 2016 where she denied any dizziness, fainting, seizures, or severe headaches, and was ambulatory without assistance. (AR 20, 731, 735.) Hunter was being examined for her alleged knee injuries, but refused all treatment recommendations of Dr. Fuji, and did not give a reason why she did not want to pursue knee injections which were potentially therapeutic. (AR 20, 480, 732.) Dr, Broderick noted that Hunter had an "odd presentation" of her symptoms. (AR 20, 632.) There was no evidence of instability with specialized testing, straight leg raises cause no referred pain, and he ultimately found that the origin of her knee complaints was obscure. (AR 20, 632-33.)

After Hunter's automobile accident on August 6, 2017, she was examined in the emergency room immediately following the incident, where she was ambulatory at the scene and denied any loss of consciousness, headache, numbness, tingling, neck pain, or chest pain. (AR 21, 749.) Hunter moved all extremities without difficulty, had intact strength and sensation, and a normal examination of the head, neck, face, eyes, throat, back, and no lacerations to the skin. (AR 43-46.) X-rays and lab studies were normal, and Hunter was sent home the same day. (*Id.*) Following the accident, Hunter was examined by Dr. Muir of Sweetwater Spine on August 22, 2017, for complaints related to the accident. (AR 21, 689-93, 1071-75.) A largely unremarkable examination showed Hunter had a non-antalgic gait, normal reflexes, muscle development and tone, normal posture, and moderately limited cervical extension. (AR 21, 691, 1073.)

Dr. Tatro examined Hunter on August 31, 2017, following a referral where Hunter complained of high levels of pain. (AR 21, 695, 971.) Hunter demonstrated a good range of motion overall, good flexion, extension, rotation, and side bending of the cervical spine, normal grip strength, and normal strength and bulk in both the upper and lower extremities. (AR 21, 691, 1073.) Dr. Ruggles last examined Hunter on October 2, 2017. (AR 46.) It is unclear what examination, if any, he performed. However, Hunter stated she had radiating pain up her arms. Dr. Ruggles asserted she was unable to do any type of work at all and prescribed Tramadol to treat her pain. (AR 724-25.) Following a move out of

state, Hunter referred herself to Spine Nevada and was examined by Dr. McAuliffe on January 19, 2018.  (AR 22, 807, 1027.)  Her complaints centered around her neck and back, but clinical testing was negative, and demonstrated a full range of motion in the hips, knees, and ankle joints bilaterally with intact strength in her upper extremities and intact sensation.  (*Id.*)

In the ALJ's weighing determination, he noted the differing medical opinions regarding what work Hunter could perform, if any, and accorded weight to opinions that could be supported by objective findings in the record.  (AR 24.)  The ALJ discounted Dr. Glick's opinion as it relied extensively on subjective claims from Hunter, where the record shows she had repeatedly not followed treatment recommendations and had inconsistent results in effort-dependent medical testing.  (AR 24.)  As to Dr. Ruggles opinion, when treating provider's opinions are based to a large extent on the claimant's self-reports, and not on the clinical evidence, an ALJ may discount the treating provider's opinions. *Ghanim*, 763 F.3d at 1162.  The record was far from consistent as to the basis of Dr. Ruggles diagnosis in comparison to other treating physicians during the relevant period. Although the ALJ is required to give specific and legitimate reasons for rejecting the medical opinions of Dr. Ruggles and Dr. Glick, he must also weigh the medical opinions, as consistency between physicians and their judgment of Hunter's limitations was varied to the degree of severity of Hunter's symptoms, and what functional capacity remained. *Lester,* 81 F.3d at 830.  The ALJ provides a thorough analysis of Hunter's conflicting medical history and treatment from various doctors over the relevant period, which justify the rejection the opinions of Dr. Ruggles and Dr. Glick. (AR 19-24.)  Therefore, this court concludes that there is substantial evidence that supports the decision of the ALJ to not afford controlling weight to the opinions of Dr. Ruggles and Dr. Glick in his determination of Hunter's RFC.

///

///

C.     The ALJ Articulated Clear and Convincing Reasons for Rejecting Hunter's Subjective Testimony.

Finally, Hunter argues that the ALJ failed to give clear and convincing reasons supported by substantial evidence for rejecting her allegations of the severity of her conditions, instead only using boilerplate language to discount her testimony.  (ECF No. 24 at 35-38.)

By contrast, the Commissioner argues the that the objective medical evidence does not support the severity of Hunter's allegations, and her inconsistent statements to physicians and refusal to seek treatment are consistent with symptom exaggeration.  (ECF No. 27 at 5-11.)  Specifically, the Commissioner highlights that according to Hunter's testimony, she was "essentially bed-ridden" and required a caregiver throughout the day. (*Id.* at 5.)

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks and citation omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154m 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v.*

15

1   *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility

2   determination with findings sufficiently specific to permit the court to conclude that the ALJ

3   did not arbitrarily discredit claimant's testimony.").

4        In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1)

5   the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony

6   or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the

7   claimant's work record; and, (5) testimony from physicians or third parties concerning the

8   nature, severity, and effect of the claimant's condition.  *Thomas*, 278 F.3d at 958-59.

9        A review of the record shows the ALJ provided specific, clear, and convincing

10  reasons for finding Hunter's statements concerning the intensity, persistence, and limiting

11  effects of her symptoms less than credible.

12                  1.   Objective Medical Evidence

13       Subjective testimony cannot be rejected solely because it is not corroborated by

14  objective medical findings, but medical evidence is a relevant factor in determining the

15  severity of a claimant's impairments.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

16  2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

17       The ALJ relied on objective medical evidence that supports the RFC rather than

18  Hunter's allegations of pain.  Although an ALJ cannot cherry pick objective medical

19  evidence from the record, they can consider contrary objective medical evidence in making

20  a credibility determination.  Here, the ALJ provided a thorough summary of the medical

21  evidence in which he highlighted specific objective findings that support the assigned RFC.

22  (AR 19-24.)  As to Hunter's nerve compression, and neck and back pain, the ALJ noted

23  multiple clinical examinations which showed unremarkable and unassisted gait, intact

24  sensation, and strength throughout all her extremities, and full strength throughout.  (*Id.*)

25  Hunter denied that she had headaches at various times but refused referrals to pain-

26  management specialists, and treatment.  (*Id.*)  As to Hunter's knee impairments, the ALJ

27  discussed Hunter's inconsistent clinical presentation, including negative special tests, and

28  obscure origin of her complaints.  (*Id.*)  The ALJ also noted treating sources opined

evidence was consistent with symptom exaggeration, specifically that her right knee was diffusely tender to the slightest touch. (AR 20, 363.)  As discussed above, the ALJ provided a detailed summary of the medical record where he highlights Hunter's propensity to exaggerate her symptoms. (AR 19-24.)  Hunter even misrepresented to one physician multiple times about drugs she was taking as prescribed by another doctor. (AR 20, 363)

Hunter consistently failed to follow the recommendations of physicians in regard to treatments, even going so far as to refuse knee injections which were potentially therapeutic, without offering any explanation as to why.  (AR 22, 480, 732, 808, 1028.) Such a refusal lends itself to an implication that Hunter's allegations of pain are less than credible.  *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (as amended) (to assess credibility the ALJ "may consider, among other factors, 'ordinary techniques of credibility evaluation,' 'inadequately explained failure to seek treatment or to follow a prescribed course of treatment,'" (citation omitted))

Further, the ALJ found that when Hunter did attend physical therapy or followed prescribed treatments, including chiropractic treatments and aqua therapy, her symptoms improved.  (AR 19-24.)  An impairment that can be effectively controlled with treatment is not disabling.  *Warre v. Comm'r, Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Further, while subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effect.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).  As discussed above, the ALJ cited a number of medical records supporting the conclusion that Hunter's physical health improved with the prescribed treatment and Hunter is not as disabled as alleged.  (AR 19-24.)  This constitutes substantial evidence, supporting clear and convincing reasons, for the negative credibility finding.

Hunter argues for another interpretation of the evidence that credits controlling weight to the opinion of Dr. Ruggles but does not establish that the ALJ erred in fact or law in analyzing the evidence.  The ALJ, not this court, is responsible for reviewing the

1  evidence and resolving conflicts or ambiguities. *Tommasetti v. Astrue*, 533 F.3d 1035,
2  1041 (9th Cir. 2008); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 603 (9th
3  Cir. 1999); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Where evidence is
4  susceptible to more than one interpretation, the ALJ's conclusion must be upheld.  *Burch*,
5  400 F.3d at 679.  As a result, evidence of improvement with treatment when Hunter did
6  follow through with the recommendations of her physicians and objective evidence
7  reflecting a lesser degree of symptoms than alleged was properly considered by the ALJ.

8  Based on the above, the court finds that the ALJ provided specific, clear, and
9  convincing reasons for declining to credit Hunter's testimony, and her credibility finding is
10  supported by substantial evidence.  *See Fair*, 885 F.2d at 604 ("Where, as here, the ALJ
11  has made specific findings justifying a decision to disbelieve an allegation of excess pain,
12  and those findings are supported by substantial evidence in the record, our role is not to
13  second-guess that decision.")  Accordingly, the court finds and concludes that the ALJ's
14  decision is supported by substantial evidence.

15  **V.   CONCLUSION**

16  Having reviewed the Administrative Record as a whole, and weighing the evidence
17  that supports and detracts from the Commissioner's conclusion, the court finds the ALJ
18  decision was supported by substantial evidence.  The court therefore denies Hunter's
19  motion to remand (ECF No. 23), and grants the Commissioner's cross-motion to affirm
20  (ECF No. 27).

21  **VI.   ORDER**

22  **IT IS THEREFORE ORDERED** that Hunter's motion for remand (ECF No. 23) is
23  **DENIED**, and the Commissioner's cross-motion to affirm (ECF No. 27) is **GRANTED**; and,
24  **IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and **CLOSE THIS**
25  **CASE**.

26  **DATED**: __March 11, 2021__

27
28  _____
   **UNITED STATES MAGISTRATE JUDGE**